UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY KITTELSON,<br><br>                    Plaintiff,<br>     vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>                    Defendants. | Case No.  3:24-cv-1374-L-MMP<br><br>**ORDER:**<br><br> **(1) DENYING PLAINTIFF'S MOTION TO FILE DEFAULT JUDGMENT [ECF NO. 6]; AND**<br><br>**(2) GRANTING DEFENDANT'S *EX PARTE* MOTION TO SET ASIDE DEFAULT [ECF NO. 10]]** |

Pending before the Court are Plaintiff's motion to file default judgment [ECF No. 6] and Defendant's *ex parte* motion to set aside default [ECF No. 10.] The Court decides the matter on the papers submitted without oral argument. *See* Civ. L.R. 7.1(d.1).  For the reasons which follow, Plaintiff's motion is denied and Defendant's motion is granted.

I.   BACKGROUND

On August 2, 2024, Plaintiff Kristy Kittelson ("Kittelson") filed the instant action against Defendant Midland Credit Management, Inc. ("Midland") asserting violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the

1

"FDCPA"). (Complaint at 1-9). Plaintiff claims that Midland communicated with Plaintiff after notice that Plaintiff was represented by counsel, Midland communicated with Plaintiff after Plaintiff provided a cease and desist from further communications, Midland made a false representation of the name of the creditor to whom the alleged debt was owed, thereby collecting a debt not owed to Midland, and Midland communicated with third-parties without Plaintiff's prior consent.

On January 2, 2025, Plaintiff filed a request for entry of a Clerk's Default against Midland due to Midland or its counsel's failure to appear and on January 3, 2025, the Clerk of the Court entered a Clerk's Default against Midland. [ECF Nos. 4, 5.]

On January 13, 2025, Plaintiff filed a request to file a motion for final default judgment [ECF No. 6], and Defense attorneys Thomas Landers, Esq. and Ethan B. Shakoori, Esq. filed notices of appearance and an *ex parte* motion to set aside the Clerk's Default. [ECF No. 10.] Plaintiff filed an opposition to the *ex parte* motion to set aside default [ECF No. 11] and Defendant filed a Reply [ECF No. 12.]

II.     LEGAL STANDARD

Under Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), overruled on other grounds, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147-50 (2001). The good cause analysis considers three factors: (1) whether defendant engaged in culpable conduct that led to the default; (2) whether defendant had a meritorious defense; or (3) whether reopening the default judgment would prejudice plaintiff. *Franchise Holdings II, LLC v. Huntington Restaurant Group*, 375 F.3d 922, 926 (9th Cir. 2004). Because the factors are disjunctive, a district court is free to deny the motion "if any of the three factors [are] true." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir.2000). "The court's discretion is especially broad where, as here, it is entry of default that is being

set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir.1986).

      A. CULPABLE CONDUCT

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TGI Group Life*, 244 F.3d at 697 (emphasis in original).

Plaintiff claims that Defendant's actions were "devious, deliberate, willful, and/or bad faith" because Midland was properly served with the Summons and Complaint on August 5, 2024, at the same address where Midland has been served in other cases, but Midland did not challenge service and did not timely file a responsive pleading. (Oppo. *Ex Parte* at 9 [ECF No. 11.]) Plaintiff further claims that Defendant had constructive knowledge of the Complaint because Plaintiff's counsel emailed Thomas Landers, who regularly represents Midland in the State of California, twice to ask if Landers was representing Plaintiff and sent him a copy of the filed Complaint, yet Landers and co-counsel only notified Plaintiff that they represented Midland after Plaintiff filed the Motion for Final Default Judgment. (*Id*. at 4, 6-7).

Defendant counters that Midland's conduct was not culpable because Midland had no record of receiving service of this action as a result of Plaintiff sending it to the wrong address, and the declaration of service was defective. (*Ex Parte* App. at 13 [ECF No. 10.]) Defendant claims that Midland investigated the Complaint that was emailed to Landers, determined Midland had no record of being served, formally retained Landers to represent Midland, and Midland then instructed Landers to respond to the Complaint, indicating diligence. (*Id*. at 15).

The Court finds no culpable conduct by Midland. First, it appears Defendant did not have actual notice because Midland was not properly served with the Summons and Complaint. Defendant claims that Plaintiff used suite number 300 rather than Suite 100 at 350 Camino De La Reina, San Diego, CA 92108, but Suite 300 is inaccessible to anyone without proper security credentials, therefore the

1  service processor could not have served a Midland representative at that address. (*Ex
2  Parte* at 13). Plaintiff counters that Midland has been served at that address in other
3  cases, including *Mihich v. Midland Credit Management*, case number 2:24-cv-
4  06498-FMO-KS (C.D. Cal), after which Midland filed timely responsive pleadings.
5  (Oppo. at 9). However, a comparison between the *Mihich* and *Kittleson* Proofs of
6  Service of Summons does not indicate that the process server personally served a
7  Midland representative in this case. The *Mihich* Proof of Service indicates that
8  process server Michael R. Taylor attests he served Midland at 1:10 pm on August 5,
9  2024 "by personal service" noting that he "delivered the documents to Midland
10 Credit Management, Inc." and "[t]he individual appeared to be a black-haired
11 Hispanic male contact 35-45 years of age, 5'6''-5'8' tall and weighing 160-180 lbs
12 with a mustache and an accent." (Oppo. Ex. 4; Reply at 2). In contrast, the Proof of
13 Service in the present action does not give a description of the person to whom the
14 documents were handed, and the process server simply filled in the date and time.
15 (Oppo. Ex. 3 [ECF No. 11-3.]) The absence of a description for the person to whom
16 the process server purportedly delivered the Complaint and Summons, particularly in
17 contrast to the *Mihich* Proof of Service, supports the contention that personal service
18 was not properly effectuated.

19     Second, Plaintiff claims that Midland also had constructive notice of the
20 Complaint because Plaintiff's counsel sent a copy of the Complaint to Landers via
21 email on December 3, 2024, therefore, Midland acted culpably by failing to respond.
22 Landers received an email from Plaintiff's counsel on December 3, 2024, asking if he
23 represented Midland, to which Landers replied that he would have to look into it and
24 get back to Plaintiff's counsel. (Oppo. at 2-3). On December 9, 2024, at 10:44 a.m.
25 Landers sent an email to Plaintiff's counsel stating that he sent the Complaint to
26 Midland and they were looking into it. (Oppo. Ex. 2 [ECF No. 11-2.]) About three
27 hours later, Plaintiff's counsel emailed Landers asking if there was an "ETA on a
28 response?" to which Landers responded on December 12, 2024, that he did not have

4

1  an ETA, and that it was a difficult time of year to get things done due to the holidays
2  and year-end tasks. (Oppo. at 3).

3  On January 2, 2025, Plaintiff sought entry of Clerk's Default. On the same day,
4  Midland requested that Landers represent it in the case, noting they had no record of
5  being served. (Reply at 1). On January 3, 2025, Lander's emailed Plaintiff's counsel
6  stating that he represented Midland. (*Id.*) A series of emails and phone calls between
7  the parties followed between January 6, 2025, and January 10, 2025, in which
8  Landers requested that Plaintiff stipulate to vacating the Clerk's Default and require
9  Midland's response to the Complaint within 21 days of the Court's order on the
10 stipulation, but Plaintiff refused.

11 The record shows no intentional failure to file a response to the Complaint by
12 Midland, rather it appears that the improper service, combined with the generally
13 understood slowdown in business during the holidays, resulted in an understandable
14 delay. On the first business day of the new year, Midland retained counsel and moved
15 forward with representation. Plaintiff acknowledges that when properly served in the
16 *Mihich* case, Midland did not challenge service but instead timely responded to the
17 Complaint, providing further support that the Complaint was not properly served in
18 this case because Defendant failed to answer which does not comport with Midland's
19 custom and practice. Accordingly, Plaintiff has not demonstrated that Defendant
20 engaged in culpable conduct under Rule 55(c). *See TCI Group*, 244 F.3d at 697.

21 B. MERITORIOUS DEFENSE

22 "All that is necessary to satisfy the 'meritorious defense' requirement is to
23 allege sufficient facts that, if true, would constitute a defense: 'the question whether
24 the factual allegation [i]s true' is not to be determined by the court when it decides
25 the motion to set aside the default." *U.S. v. Signed Personal Check*, 615 F.3d 1085,
26 1094 (9th Cir. 2010). The truth of the factual allegations is a question that "would be
27 the subject of the later litigation." *Id*.

28 As noted above, Plaintiff's FDCPA allegations assert that Midland

communicated with Plaintiff after notice that Plaintiff was represented by counsel, Midland communicated with Plaintiff after Plaintiff provided a cease and desist from further communications, Midland made a false representation of the name of the creditor to whom the alleged debt was owed resulting in the collection of a debt not owed to Midland, and Midland communicated with third-parties without Plaintiff's prior consent.

In response, Midland raises sufficient facts which, if true, would constitute a defense. Namely, that (1) Midland owns all rights, title and interest to the subject debt; (2) Midland did not disclose any of Plaintiff's personal information to a third party because the letter vendor is Midland's agent; (3) Plaintiff has no standing to her reputational harm claims predicated on the purported disclosure to a letter vendor; and (4) Midland did not have actual knowledge that Plaintiff was represented by counsel when it directly communicated with Plaintiff after purchasing the debt. (Oppo.at 16; Reply at 16). If these facts prove to be true in later litigation, they will provide a meritorious defense to Plaintiff's claims, supporting a finding of good cause to set aside the Clerk's Default.

### C. PREJUDICE

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701; *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000). "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment." *TCI Group,* 244 F.3d at 701; *see also Abbate Family Farms Ltd. P'ship*, 2010 WL 694230, at *2 (observing that the "[p]laintiff still would have had to prosecute the case if default had not been entered" and thus having to expend additional time and money was not prejudicial).

Plaintiff claims she will be prejudiced if the Court sets aside the Clerk's Entry of Default because she has already incurred attorney's fees due to Midland's failure to timely file an answer and because there is potential harm to Plaintiff from loss of

evidence based on the factual record before the Court.

The Court finds no prejudice to Plaintiff by setting aside the Entry of Default and requiring the case to proceed, despite the additional expense she incurred. *Hawkins v. Bank of America*, No. 17-cv-1954-BAS-AGS, 2018 WL 3426218 at *8 (S.D. Cal. July 16, 2018) ("incurring additional time and expense in litigating a case on the merits is not prejudice that precludes setting aside a procedural default.") Similarly, Plaintiff cannot establish prejudice based on the concern that evidence will be lost. *SUSA Financial, Inc. v. Sprout Mortgage, LLC*, No. SACV 22-1864 JVS (DFMx), 2023 WL 3551968 at *2 (Apr. 19, 2023) ("The fact that setting aside the default may result in continuing the case on the merits, and in effect possibly allowing Sprout to divert funds, is not prejudicial to SUSA. SUSA would have been in that position anyways had the default not been entered.")

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendant's *ex parte* motion to set aside the Clerk's default and DENIES Plaintiff's motion to enter final default judgment as moot. Defendant is directed to file a responsive pleading no later than February 18, 2025.

**IT IS SO ORDERED.**

Dated: January 27, 2025

_____
Hon. M. James Lorenz
United States District Judge

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28